My name is Fred Perillo. I represent Teamsters Local 120. More than 30 years ago, the Supreme Court of the United States in the Misko decision stated that, and I'm quoting, where the contract provides grievance and arbitration procedures, these procedures must first be exhausted, and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute. This case is a claim by Sysco that Local 120 violated the no-strike clause of their collective bargaining agreement when its members refused to cross a picket line established by a different union, Local 41. That is a claim under this court's decision in Valmeck and the Supreme Court's decision in Buffalo Forge that clearly is arbitrable under the collective bargaining agreement, and a claim that clearly had to be processed through the grievance procedure. That was not done, and that was an error. But didn't you waive it by participating in the litigation pretty extensively for a long while? No, no, and no. Okay. First, this conflates the defense of exhaustion of contractual remedies with the claim of waiver of a right to arbitrate. They're two distinct concepts, and as this court said in ABF, the defense to a claim of exhaustion is either futility, that it would be useless to go through the procedure, a claim Sysco never made here, or that the procedure is not available, also a claim never made here because it clearly was available. So that's a distinct concept. We also did not participate in a protracted litigation. This was eight months. Discovery finished early. The parties proceeded swiftly to dispositive motions. Did both parties? You filed a motion, or your client filed a motion for summary judgment as well? Yes, which presented, as it said in its Rule 26F report, the defense of failure to exhaust the contractual remedies. So there was, just like in the ABF case, a short period of litigation. I think ABF was also eight months, and one which concluded with the party claiming that the case should go through the grievance procedure, presenting that argument to the court. Was that ever raised before, or was that the first time? I did not see during that eight-month period anything to compel arbitration or to stay the litigation. Is that right? It is correct that there was no motion for a stay. However, unlike in ABF where the union never raised the grievance and arbitration procedure in a pleading, immediately when this case was filed, Local 120 raised exhaustion. And it's not arbitration. It's exhaustion of contractual remedies was actually the defense raised. And when an amended complaint was filed, an amended answer including that defense was raised again. In fact, Local 120 raised this defense in every pleading permitted by Rule 8 of the Federal Rules of Civil Procedure and then included it specifically as the dispositive motion it would bring in its Rule 26F report. Counsel, is there a difference between raising a defense and preserving it? In this context, Your Honor, I would say no. For example, this court in ABF did not say that the union there had waived its right to go to the grievance procedure by having failed in that eight-month period where they were litigating their various motions  And I would also point out that in many cases where employees bring claims directly against employers that are subject to a grievance procedure under a collective bargaining agreement, such as this court's Peterson case cited in brief or this court's Woody case cited in brief, this court has never said that the employer waives that defense by failing to force the employee into arbitration before they have even filed a grievance. And that would be a horrible rule for this court to have to condition waiver on a compelled motion to proceed to arbitration early in a case. That would have the effect of multiplying the cost of litigation for employers, not just unions but for employers, by a tremendous sum of money. Isn't it really a question then of whether you've acted inconsistently with that right? I do agree with that, Your Honor. The question here is, was Local 120 trying to have it both ways? In other words, were we laying in the weeds on our defense that the grievance procedure was required to be exhausted, hoping that we would hit the employer with lightning on a different defense and then only belatedly, after we lost, saying, oh my gosh, now we have to come up with a new idea? Nothing like that happened in real life. The same dispositive motion that included Local 120's other defenses featured prominently its motion that the employer had failed to exhaust the contractual remedies and the case should therefore be dismissed. We raised at the earliest possible point in the answer and then again in the Rule 26F report that this was our intention all along. So it was not as if we were waiting and seeing or riding the fence and then belatedly trying to scramble to come up with a new argument. The policy judgment you are angling at, Your Honor, if I could guess, is that there should be a new rule, one that didn't appear in Peterson or Woody or in ABF, that if a party wants to assert that the collective bargaining agreement's grievance and arbitration procedure is applicable, they have to bring an early motion under the Federal Arbitration Act in order to force the other party to stay the litigation and move directly to arbitration. There's a problem with that, of course. In this particular case, Cisco, the party with the obligation to file a grievance, filed no grievance. They didn't take it through the five-step procedure, including a joint committee procedure that requires that committee to deadlock before the case is ripe for arbitration. Is the grievance process commonly used by both sides or is it primarily a union-used tool with the companies? And does that matter? The procedure is, I would say... The language seems to almost assume that the grievance is coming from the employee's side. There are specific references in the grievance procedure that show that both parties can file grievances. One, for example, is in the section where the reply to the grievance must be given. It says the reply can be given by the employer or the union. Now, the union would never be replying to its own grievance or to an employee's grievance, so that indicates that the employer can file grievances under the procedure. And explicitly in step five of the procedure, it allows either party, the employer or the union, to move the case to third-party binding neutral arbitration. How does step one work under your theory? So it says any employee must discuss it with his immediate supervisor, and so who is the employer's immediate supervisor that the employer would talk to? I think it's implied in that case that since the employer would be making a claim against the union, and that is what it was doing here, it was saying that Local 120 was responsible for Local 41's activity, that they would approach us, and then the union, as it says in that step, would give the reply. All right. That's a pretty rough fit to the language. You have to read some words into it, I think. I don't think so, Your Honor. It's not a big reach. I mean, remember that this language is virtually identical to the language in the Drake Bakeries case, which the Supreme Court held did require an employer to bring a claim for strike damages under that language. So if it is an implication, it's an obvious one, not an arcane reach. Which case did you just mention? You said Supreme Court case. That's Drake Bakeries. It's cited in our brief. And if the employer couldn't get a grievance into the system, how would the employer ever ask for arbitration, as it says in Step 5? So it's clearly the possibility that those cases will go up through that five-step procedure. When the lower court got to the merits, it made serious errors of law concerning whether a strike is primary or secondary. I want to point out, again, in this case, Cisco conceded that the strike was not a secondary strike. In other words, this is not an action that could have been brought under Section 303 of the Labor Management Relations Act. Because it's not secondary, that means it's a primary activity, and that means it was protected by Article 24. But at a very minimum, Local 120 was entitled to have an arbitrator chosen under the agreement make that determination and make that interpretation, rather than have a United States district judge make that determination. I want to reserve the rest of my time for rebuttal unless the Court has further questions. I see none. Thank you. Mr. Douglas? May it please the Court, Counsel. It's been nearly two years since Local 120, in conjunction with Local 41, a stranger union out of Kansas City, set up a picket line outside of Cisco, Minnesota's food distribution center in Moundsview and shut it down for more than 15 hours, causing a ripple effect that prevented the company from servicing more than 90% of its customers for several days, leading to a loss in profits of more than $1 million. We ask that the Court affirm in all respects the judgment of the district court. I'll address two points. First, the waiver issue. We claim to this Court the union did not promptly seek arbitration. It did not do all that it could do to ask the district court to stay or dismiss the case. Does it have to do all that it could do, or could it simply do enough in terms of raising the issue before the Court in its initial replies? No, Your Honor. The union put in an affirmative defense in its answer to the complaint, claiming exhaustion of remedies and so forth. It raised the same point in the Rule 26F report, which the parties put together and submitted to the Court. But contrary to what counsel suggests, it's not a self-executing matter. It's an affirmative defense. This falls under the category of what the Supreme Court refers to as a non-jurisdictional affirmative defense. It is up to the party who desires arbitration to ask the Court for arbitration by filing a motion to dismiss the case or a motion to compel arbitration at an early date. And as a matter of fact, although the union cites a number of cases in its brief, and I'll address the two or three cases that counsel just mentioned, ABF, that was a case involving preliminary matters. In that case, the issue was whether or not there was a duly constituted group of trustees who could hear the arbitration. All the wrangling that took place in this Court and in the lower Court related to what we would call shape-of-the-table issues about whether the employer could go to arbitration. There was no decision on the merits. Likewise, Drake-Bakery's. In that case, the Supreme Court, in more or less a parallel version of the Supreme Court's decision in Maddox versus Republic Steel, which says that employees must exhaust their grievance remedies under the contract, Drake-Bakery says that an employer can be required to do so as well in a 301 action. However, here's the important point. In no case cited by the union and no case that I have found in research has this happened automatically. In every single case, the party who desired arbitration filed a motion in the Court. And that is true in Drake-Bakery's and that is true in ABF. That's true in every single case. What is the nature of the contractual agreement to use the grievance procedure? What is the company's commitment to that procedure? The company, it's like any other contractual agreement. Parties can follow it or not follow it. And if they don't follow it, it's up to the other side to complain about it. It's the same with any other provision of a collective bargaining agreement. For example, a management's rights clause. The employer can do something under the contract. It can issue a rule. It can discipline employees. And if the union disagrees with the action, it files a grievance and it takes it up. To the question that was asked, is this the kind of grievance procedure where the employer can file a grievance? We say it is not. And as a matter of fact, in the decades-long history between the parties, the employer has never filed a grievance in this case. In its brief, the union omitted most of the paragraphs of Article 22 of the contract, which listed the grievance procedure, but it is clear that this is what we would refer to. They said it's not an employee-centric, I think was the word, grievance procedure, but plainly it is. What the union seizes upon is one last sentence in Article 22.1A, which is in the joint appendix. Well, it's in the contract. And it's a sentence that says, the employer, in parentheses, or union, will give a verbal reply within five days of the discussion. Well, that's at the step one stage. What does that refer to? The union says, well, that must refer to an employer grievance. Not necessarily. Sometimes the grievances filed by employees are also against the union. They can have a grievance against the union, for example, if they think that something improper was taken out of their paycheck for dues checkoff. They can have a grievance against the union, for example, if they think that the seniority listing is incorrect. So there are some occasions where most of the time the grievance of an employee is going to be against the employer, but there are some instances where the grievance can be filed against the union, and I think that's what that clause refers to, instead of saying, well, there's an employer grievance. The point of this is arbitration is a matter of contract. The parties can agree or not agree to go to arbitration. Now, here they have a grievance and arbitration procedure. If one party refuses to go to arbitration or says, I want to exercise our rights to bring the alternative claim that Congress has provided for under Section 301A, if the other side wants arbitration, it has a simple mechanism for doing that, file a motion. That is what has occurred in every single case that has been cited to this court. The unions claim that somehow it could not pursue arbitration because the employer didn't file a grievance is incorrect, if not even silly. For example, there are cases where an employer refuses to process a grievance. It does not prevent the employee or the union from bringing a case in federal court under Section 301 to enforce the contract. As a matter of fact, that's pretty much what happened in the Drake Bakery's case, where the employer said, we don't think this is covered by the grievance procedure. They went to court to compel them to go to arbitration. In fact, what the union did, in our view, was make a strategic decision. It lay in the weeds. It litigated the case extensively. It was the first out of the box taking depositions, and it took three or four depositions. We served written discovery. It responded to written discovery. And at the conclusion of the discovery period, instead of simply saying, well, we want to dismiss the case, it actually moved for summary judgment on the merits. It asked the court for a decision on the merits, and the fallback position was send it to arbitration. Under these circumstances, under this court's precedence in Ritzle and in Erdman and the other cases we've cited, we say there has been a clear waiver of the opportunity to take this case to arbitration. It's not enough to simply put it in your answer. You have to do something about it. I'll give you another example. We have, for example, under Title VII, we know that it's a requirement that an employee file a charge with the EEOC. What if the employee doesn't file a charge? Usually they append it to their complaint when they file in federal court. What if they don't? Does the case get dismissed because somehow the district court scrutinizes it? If the employer doesn't assert that affirmative defense and make a motion to dismiss, it can be waived because the Supreme Court has told us that the same with arbitration. It was waived by the union, and nothing that the union has said should convince this court that it wasn't playing a game, that it wasn't following a strategy to have it both ways, as counsel put it. Counsel, I wanted to ask you, and we're going to switch gears a little bit, Article 24 picket lines. That is one part of the claim here, and I'm struggling because it appears that Article 24 authorizes exactly what the union did here on its plain language. And I just want you to walk through and tell me what the employer's position is on this. Certainly, Your Honor. The union has made a distinction here between primary and secondary activity. This is a fairly, it's a very detailed and somewhat arcane area of federal labor law, but let me try to summarize the issue. The picket line clause cannot apply to protect the conduct of the union that occurred at the home base, the place of employment of the employees. That's not the purpose of the picket line clause at all. First of all, the distinction between primary and secondary when it comes to a sympathy strike and whether or not sympathy strikes were waived by virtue of Article 23, which is the no strike clause, has nothing to do with primary secondary. As a matter of fact, in the parlance of labor law, when we refer to sympathy strikes, we don't characterize them as primary. We characterize them as either being protected or not protected, included in the no strike clause or not included in the no strike clause. To accept the union's argument would allow it a workaround, a back door to eviscerate the no strike clause because all the union would have to do is invite another teamster union from around the country that has a complaint with some other operating company of a large organization to say, come here and put up a picket line. Or they could invite some other union, maybe the Service Employees International that has a beef with something, to put up a picket line at our place because the union can't put up a picket line at the location. It can't go on strike. But isn't the limit in our case law itself which says that these organizations must be allied in interest? So here, Cisco Kansas City and Cisco Minnesota are under the same umbrella of the Cisco whatever holding company. And so doesn't that give an implicit limitation? No, Your Honor, it does not because they're not the same employer. And that's the issue. What the union is trying to do, although it didn't introduce any evidence of this and it didn't follow that line of that theory, it's not the same employer. The cases that it relies on, like Morrell and Standard Concrete and so forth, those cases did involve the same company having contracts or different bargaining units with the same union for different plans. Each one of the Cisco operating companies is separately incorporated, separately managed, has its own officers, and more importantly, it has its own collective bargaining agreement with a different union. There's no connection here whatsoever between Local 41 and Cisco Minnesota. As a matter of fact, Local 41's business agent who started the strike, the picket line, admitted they don't have a beef with Cisco Minnesota. There was no labor dispute and nor did Local 120 have a labor dispute with Cisco Minnesota. There was nothing going on at the time at all. But don't we have to look at, and this gets to the allied interest point, don't we have to look at it from Local 41's point of view, which is they thought the best way to exact concessions from their employer was to go after another Cisco company. And so that would seem to be a little different case than what you're talking about. No, it's actually the same thing. I think it's Bachman Engineering is the Eighth Circuit's opinion. There's no evidence in the record at all that these companies operate together, that they have any common management, they have common policies, they don't have a common contract. They're completely separate companies in their spheres. That's how they operate. The mere fact that they are subsidiaries of an overall corporation does not make them, quote, unquote, the same employer. The allied doctrine applies largely to if, for example, a struck work is being transferred from one company to another. So that's really not, I don't think, the applicable point. The union is attempting to introduce confusion here by saying it's either primary or secondary. That's really not the point. The point is that Local 120 has a very solid, broad, no-strike clause in its contract, and it agreed not to go on strike. Throughout the entire case, up until the moment of summary judgment, the union claimed it wasn't on strike, that this was merely an... Or is that something one learns from the... No, Your Honor, it doesn't define it, but the purpose of that clause is twofold, and I'll briefly... First off, it is to allow the truck drivers, if they're delivering at a customer's location where there's a strike going on, let's say at the restaurant, the employees of the restaurant are on strike, the truck driver wouldn't have to cross that picket line, and there's a procedure for that. You call ahead, a manager of the customer comes out and gets the product. You drop the product outside the picket line, and then everybody's happy. That's the way it works. The other reason for the inclusion of the word primary is that they have to identify it as a primary strike at the other location because it would be a violation of Section 8b-4 of the National Labor Relations Act and possibly the hot cargo provisions of the Act if someone refuses to go through a secondary picket line. Secondary activity is by and large outlawed under the National Labor Relations Act. Counsel, when we're looking at the meaning of the no-strike clause in the collective bargaining agreement, does John Morrell require us to go outside the language of the agreement to things like history of bargaining between the parties? I'm not sure it requires it. It permits it. It says that you can look at that if it's unclear. In this case, we believe the district court got it exactly right. The language is clear and unambiguous that strikes are prohibited and that it's broad enough to include sympathy strikes, and we believe that Judge Magnuson got it right on that score. There's one point I did want to call to your attention lest I forget. The union makes a great big point of saying that there's some kind of a grievance here, and it talks about its inability to proceed because of a grievance. I refer the court to the joint appendix atóhere it is. This is what the union said at oral argument in the district court regarding the grievance. This is the only part of the record where the union says, well, there's a grievance here. There was no grievance. This is what was said in the district court by counsel. The local union in this case filed a grievance about the company's instructions to our members, contrary to Article 24 saying that they needed to report for work and cross local 41's picket line. This refers to a letter that the company sent out afterwards telling people they weren't going to be disciplined this time, but they should not do this in the future. The counsel goes on to sayó Mr. Perillo, you can cite that to us. We can read it for ourselves. Yes, Your Honor. JA 491 and 492. The point of it is that the union claimed in its statement to the court that filing the grievance over the strike and the damages was not something that it had to do. It's our problem. There's nothing in the contract, nothing in the federal law that would require the employer to file a grievance first before seeking its remedies under Section 301A of the Labor Management Relations Act. It's up to the union to pursue arbitration at that point. Thank you. Thank you, Your Honors. Mr. Perillo, your rebuttal. Thank you, Your Honor. So I want to answer directly your question, Judge Gross, about Morrell. Morrell clearly says that a generic no-strike clause, such as the one contained in this contract, without more, does not waive sympathy strikes. The court directed in Morrell that the lower court would examine the bargaining history, the party's course of conduct, and any other relevant information concerning the intent as to whether or not there was a waiver. The employer is the one who bears the burden of proof on this. They have to show by clear and unmistakable evidence that there is a waiver. In this case, there was no trial here. There were no factual findings by the lower court. This was a motion for summary judgment where both parties presented what they thought the bargaining history was, and the judge said, it's inconclusive. That means that the party seeking summary judgment loses, so Cisco should not have gotten judgment. If, in fact, the presumption is there's no waiver and the additional extrinsic evidence is inconclusive, that means you either go to trial or the party with the burden of proof loses. What Judge Magnuson did instead was to go to the extreme opposite end and say, I'm going to find now that the language the Eighth Circuit said couldn't be interpreted as a waiver can only be interpreted as a waiver. That was plainly an error. Counsel, could you address the argument that your interpretation of the no-strike provision, and particularly the no other interference clause, that that would basically render that provision ineffectual, the way that you interpret it, if it would allow sympathy strikes notwithstanding that broad language? I think the answer to that is the record shows that in 30 years there have been two instances, including this one as one of the two, where a stranger picket has showed up at Mounds View. It's not something that happens frequently. I mean, it's a ghost story to think that unions are going to just randomly send out picketers to go and shut down companies for no reason. I'm not sure that answered his question, though, because he's asking, what is covered by any other interference? I mean, what would be covered other than a sympathy strike? I think that was his question. Or at the very least, that's what I'm interested in. You mean under Article 24? Under Article 23, right? So it says, or any other interference with the operation of the business. What is encompassed by that if it doesn't include sympathy strikes? Boycotting their customers, informational picketing activities to embarrass their board of directors. I mean, there's all kinds of stuff that would be covered by that. The point regarding Article 24 is that it simply says that employees have the right to refuse to cross where a union is on primary strike. That does not limit this to locations other than the premise of CISCO. And again, CISCO is the party with the burden of proof here. If they were not able to establish on undisputed facts a clear waiver of the right to refuse to cross that is preserved in this article, they shouldn't have gotten judgment. We should have gone to trial. And that trial should have been before a joint grievance committee, if necessary. An arbitrator. I want to just, in the moment I have left, just to address the claim that in all of these cases a motion to compel arbitration was required. That is true only with respect to certain commercial and bankruptcy cases that have no grievance procedure. In other words, there was no preliminary procedure to go to. So the party, for example, in Llewellyn or in Erdmann, who was prosecuting a bankruptcy claim in Llewellyn's case, for example, couldn't go to a grievance procedure. And the court said, you should not have litigated the proof of claim, then the objection to the proof of claim, and then finally a third proceeding, an adversary proceeding on the proof of claim, without asserting your right to arbitration. That's not the case here. From the day one that this lawsuit was filed, Local 120 said this case belongs in the grievance procedure. And in no case involving the grievance procedure has this court ever required a motion to compel. If you look at ABF, the case was simply dismissed out of hand. If you look at the Woody case, the case was dismissed. And likewise in Peterson. I have run out of time. Is there a question the court has? Thank you, Your Honors, for your kind attention. Thank you, Mr. Perrillo. Thank you also, Mr. Douglas. Court thanks both counsel for the briefing you've submitted to us and the argument you provided this morning. We will take the case under advisement. You may be excused. And, Clerk, I believe we have one case remaining. United States v. Paul Winnick. Thank you.